| 32 | 393 |
| 82 | 444 |
| 32 | 393 |
| 84 | 426 |

TAYLOR, CLEVELAND & CO. VS. LITTLE ROCK, MISSISSIPPI RIVER AND TEXAS RAILROAD COMPANY.

1. COMMON CARRIER: *Restriction of Liability by Contract.*
   A railroad company which gives a bill of lading for the transportation of goods over its own line, and other connecting carriers, to a point beyond the terminus of its line, may stipulate against liability for loss of, or damage to the goods, while in the custody of a connecting carrier.

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*Wise,* for appellants.

*Bell, contra.*

ENGLISH, CH. J.:

On the 26th day of June, 1876, Taylor, Cleveland & Co. sued the Little Rock, Mississippi River and Texas Railroad Company, (successors of the Little Rock, Pine Bluff and New Orleans Railroad Company,) before a justice of the peace of Jefferson County, on a bill of lading.

The plaintiffs filed a formal complaint in writing, to which the defendant corporation filed an answer containing three paragraphs.

The plaintiffs obtained judgment before the justice of the peace, and the defendant appealed to the Circuit Court.

In the Circuit Court, the defendant withdrew the first and second paragraphs of the answer, and the plaintiff demurred to the third paragraph; the court overruled the demurrer, final judgment was rendered in favor of defendant, and plaintiffs appealed.

The complaint is, in substance, as follows :

I.   The plaintiffs complain and allege :

" *First*—That at the times hereinafter mentioned, the defendant was a common carrier of goods, for hire, between the places hereinafter mentioned :

"*Second*—That on the 15th day of December, 1875, at the City of Pine Bluff, in consideration of the sum of two dollars per bale, payable upon the safe carriage of the goods hereinafter specified, the defendant agreed safely to carry to the City of New Orleans, Louisiana, and there deliver to John Phelps & Co. certain goods,

the property of the plaintiffs herein, of the value of $480, consisting of eight bales of cotton, covered by the bill of lading hereto attached, and marked Exhibit A, and which the plaintiffs then and there delivered to the defendant, which received the same upon the agreement and for the purposes before mentioned, and which said agreement is hereto attached as aforesaid, marked Exhibit A.

" *Third*—That the defendant did not safely carry and deliver four bales of the cotton as aforesaid, marked respectively as per bill of lading, (here the marks of the bales are copied,) and of the value of $240, pursuant to agreement as aforesaid, but, on the contrary, the defendant so negligently conducted and so misbehaved in regard to the same, in its calling as a carrier, that the said four bales were wholly lost to the plaintiffs.

II. Cause of action.

" *First*—That the said defendant did not carry and deliver the said eight bales of cotton, pursuant to its agreement herewith filed as aforesaid, marked Exhibit A, but on the contrary the said defendant failed to carry and deliver four of the said eight bales, marked as aforesaid, in sec. 3 of the first cause of action, to the said John Phelps & Co., of New Orleans, Louisiana, the consignees thereof, or any one else for the said plaintiffs, and the said four bales of cotton have been an entire loss to the plaintiffs, on account of the negligence of the said defendant.

" *Second*—That no part of the account hereto attached, and made a part hereof has been paid.

" Wherefore plaintiffs demand judgment for $240, and interest," etc., etc.

The bill of lading made an exhibit to the complaint is, in substance, as follows :

" Freight office, Little Rock, Pine Bluff and New Orleans Railroad.

" Bill of Lading:

" PINE BLUFF, ARK.; *December 15th, 1875.*

" Received of Taylor, Cleveland & Co., in apparent good order, except as may be herein specified, to be conveyed by the Little Rock, Pine Bluff and New Orleans Railroad, from Pine Bluff, Ark., to elevator, wharf boat, or levee, at Chicot, Ark., from thence by steamer on the Mississippi River, (the dangers of river, collision, explosion and fire excepted,) and connecting railroads, subject to the conditions of their several charters, tariffs and various regulations, which are to be delivered in like good order and condition, without unnecessary delay, at New Orleans, Louisiana, unto John Phelps & Co., marked and numbered as per margin, to be transported from Pine Bluff to their said place of ultimate destination.

" The packages aforesaid must pass through the custody of several carriers. It is understood, as a part of the consideration on which said packages are received, that the exceptions from liability made by such carriers respectively, shall operate in the carriage, by them, respectively, of said packages, as though herein inserted at length; and especially that neither said carriers, nor either, nor any of them, shall be liable for leakage of any kinds of liquids, etc., etc., etc. And it is further especially understood, that for all loss or damage occuring in the transit of said packages, the legal remedy shall be against the particular carrier only in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the Little Rock, Pine Bluff and New Orleans Railroad, in receiving the said packages, to be forwarded as aforesaid, assumes no responsibility for their safety or safe carriage, than may be incurred on its road, etc., etc.

" Cotton, per bale, $2.50."

The eight bales of cotton are in the margin, marked as indicated in the complaint, and the bill of lading is signed by the agent of the company.

The third paragraph of the answer, to which appellants demurred, is, in substance, as follows :

" Defendant further says that the said cottton was not lost by the said Little Rock, Mississippi River and Texas Railway; but that said company safely did convey all of said cotton over its line to Chicot City, the terminus of said line, and there did safely deliver said eight bales of cotton to the good steamer Mary Bell, running on the Mississippi River, from Chicot, as aforesaid, to said port of New Orleans, to be transported to said port of New Orleans, to be delivered to John Phelps & Co., and took the bill of lading of said steamer Mary Bell, for the same, according to the terms and condition of said receipt or bill of lading, (made an exhibit to the complaint,) and that no loss or damage occurred to said cotton while under the control of said Little Rock, Pine Bluff and New Orleans Railroad Company. Wherefore, said last mentioned company was not liable for any supposed loss and damages to said company."

No question is made upon the appeal as to the liability of the appellee corporation upon a contract made with the Little Rock, Pine Bluff and New Orleans Railroad Company, the paragraph of the answer setting up that defense having been withdrawn from the court below.

Though the appellee corporation gave a through bill of lading for the cotton, from Pine Bluff to New Orleans, it expressly contracted against liability for loss or damage to the cotton occurring beyond the terminus of its own line, at Chicot City, on the Mississippi River, in this State.

The appellee is responsible as a common carrier. Angel on Carriers, sec. 109.

A common caraier is regarded by law as an insurer of the property entrusted to him ; or, in other words, he is legally responsible for acts against which he would not provide, from whatever cause arising, the acts of God and the public enemy only excepted. The loss, or damage done to property in his possession, to be carried, is of itself sufficient proof of negligence, the maxim being, that everything is negligence which the law does not excuse ; so that in all cases, but those just mentioned as excepted, his faultlessness is no discharge. Ib., sec. 67.

How far a common carrier may contract against liability for loss or damages occuring, otherwise than by the acts of God, or the public enemy, has been the subject of much judicial controversy. Sec. 2, Redfield on Railways, sec. 161 to 163, and notes.

In *Railroad Company* v. *Lockwood*, 17 Wallace, 357, the Supreme Court of the United States held, upon a very full review of the authorities, that whilst common carriers might contract against liability for losses, etc., occurring from unavoidable accidents, it was against public policy to permit them to contract for exemptions from liability from losses and damages happening from the negligence of themselves or their servants.

In that case, the New York Central Railroad Company gave a cattle drover a pass upon its line from Buffalo to Albany, but declared in the pass that its acceptance was to be considered a waiver of all claims for damages or injuries received on the train. Lockwood, the drover, sued the company for an injury sustained in consequence of the negligence of the company, or its servants, and it was held that the company was liable for such negligence, notwithstanding the stipulation for exemption in the contract.

This case was approved in *Bank of Kentucky* v. *Adams' Express Company*, 3 Otto, 174.

That a railroad corporation, in giving a bill of lading for the transportation of goods over its own line, and other connecting lines of railways, or other public means of carriage, may, as in this case, contract against liability, loss of, or damage to the goods happening beyond the termination of its own line, we think well established by the adjudications. *Railroad Company* v. *Manufacturing Company*, 16 Wallace, 324; *Railroad Company* v. *Pratt*, 22 Wallace, 129; *Foy* v. *Troy and Boston Railroad Company*, 24 Barb., 382; *Adams' Express Company* v. *Wilson et al.*, 81 Ill., 340; *United States Express Company* v. *Haines*, 67 Ill., 137; *Nutting* v. *Connecticut River Railroad Company*, 1 Gray, 502; *Buckland et al.* v. *Adams' Express Company*, 97 Mass., 131; 2 Redfield on Railways, sec. 162, and notes.

Whether the appellee corporation would have been liable for the loss of the cotton occurring beyond the terminus of its own road, in the absence of stipulation in the contract of affreightment against it, we have no occasion to decide on this appeal.

The judgment of the court below is affirmed.